UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
DARYL PINKNEY,
                                :
            Petitioner,
                                :
      -against-                 REPORT & RECOMMENDATION
                                :
DANIEL SENKOWSKI,               03 Civ. 4820 (LTS)(MHD)
                                :
            Respondent.
------------------------------x

TO THE HONORABLE LAURA T. SWAIN, U.S.D.J.:


    Pro se petitioner Daryl Pinkney seeks a writ of habeas corpus
to challenge his 2000 conviction in New York State Supreme Court,
New York County, on a single count of first-degree robbery. The
trial court sentenced Pinkney to a prison term of fifteen years, a
sentence that he is currently serving.


    In support of his petition, Pinkney asserts two claims. First,
he argues that he was denied his right to a twelve-person "fair and
impartial" jury because two alternate jurors who ultimately became
deliberating jurors were never sworn. (Pet. at ¶ 12(A)). Second, he
complains that he was denied a fair trial because the trial judge
declined to give an alibi instruction to the jury despite
petitioner's presentation of an alibi defense. (Id. at ¶ 12(B)).
Respondent argues that both claims are meritless. For the reasons
that follow, we agree and recommend that the petition be dismissed
with prejudice.

1

## Prior Proceedings

Pinkney's conviction stemmed from the December 31, 1999 armed robbery of a Ms. Marie Armand. The victim was a nurse who was present in a building at 55 East 102nd Street in Manhattan to visit a patient. She entered the elevator at the same time as a man, who proceeded to rob her at knifepoint and then fled from the building. The robber took Ms. Armand's cash, salary paycheck and cell phone. Based on subsequent call records for the phone, the police placed Pinkney in a lineup on March 3, 2000, and Ms. Armand identified him as the man who had robbed her.

In the wake of these events a New York County grand jury returned an indictment against Pinkney, charging him with single counts of first-degree robbery and first-degree burglary. (Undated Declaration of Ass't Att'y General Laurie M. Israel, Ex. B at 2 & n.1). The state court dismissed the burglary count on the basis that the evidence before the grand jury did not support such a charge, thus leaving only the robbery charge for trial. (Id., Ex. B at 2 n.1).

Prior to trial, petitioner moved to suppress his statements to the police and Armand's identification of him. Following a hearing before the Hon. Dorothy Cropper, S.C.J., the court denied his

motion. (Id. at 2).

Pinkney went on trial on October 23, 2000 before the Hon. William Leibovitz and a jury on the robbery charge. At trial the State called Ms. Armand, who recounted the robbery, identified petitioner as her assailant and confirmed that she had selected him at a pretrial lineup. (Tr. 292-304, 319, 352-53). The State also called two cellular telephone company representatives to authenticate cell phone records for Ms. Armand's cell phone. The records reflected a series of phone calls from that phone after it had been stolen, and those calls had gone to three people, a Mr. Nandi Ben-Jochannan, a Ms. Melissa Thompson, and a Ms. Peggy Mondtague. (Tr. 370-81, 384-85, 387-400, 424-26, 448).[1] Finally, a police detective testified that, based on his interview with Ms. Thompson, he arranged for a lineup involving petitioner and five fillers who physically resembled him, and that at the lineup Ms. Armand identified petitioner as the robber. (Tr. 427-31, 434-36).

The defense called two witnesses. Mr. Ben-Jochannan testified that petitioner had been with him and his girlfriend from the late evening of December 30, 1999 until at least 6:00 a.m. and possibly

---

[1] As a result of the testimony of a defense witness, Mr. Ben-Jochannan, the jury learned that these three individuals were petitioner's friend of twenty years, his mother-in-law and his girlfriend, respectively. (Tr. 454-55, 460).

as late as 7:30 a.m. the following morning, celebrating Ben-Jochannan's birthday. (Tr. 449-51, 454, 465). According to the witness, the party had taken place at his home on Eighth Avenue between 143rd and 144th Streets. (Tr. 450). Ben-Jochannan reported that he had met petitioner again that same morning between 10:00 and 11:00 a.m. (Tr. 466).

The second witness, Quincy King, testified that he had seen Pinkney standing in front of a grocery store in the vicinity of 143rd Street and Eighth Avenue on the morning of December 31, 1999 as King emerged from a taxi. King did not know the exact time of his encounter with petitioner, but he estimated it to have been between 7:30 and 7:45 a.m. (Tr. 469-72, 479-80).

On October 26, 2000, the jury returned a guilty verdict. (Tr. 578-80). On November 16, 2000, the trial court adjudicated petitioner to be a second violent felony offender and sentenced him to a fifteen-year prison term. (S. Tr. 2-4; Israel Decl., Ex. B at 1).[2]

On October 24, 2001 Pinkney filed a motion to settle the trial transcript. (Id., Ex. B at 15). The focus of the motion concerned

---

[2] The transcript of the sentencing proceeding provided to the court is incomplete, but the state appellate briefs confirm the sentence imposed on Pinkney.

the question of whether the two alternate jurors who ultimately deliberated had ever taken a juror's oath prior to commencement of the trial. The question apparently arose because the trial transcript did not reflect that oath having been administered, as required by N.Y. Crim. Proc. L. §§ 270.15(2) & 270.30(1). (See Israel Decl., Ex. A at 18-19).

Justice Leibovitz conducted a hearing on the issue on April 4, 2002. The court reporter who had covered the pertinent portion of jury selection testified that she had no independent recollection of the pertinent events but assumed that if she did not include a notation that the alternate jurors had been sworn, that event had not taken place. (SH 3-4, 10-11, 14-18). In contrast, the State called one former alternate juror at Pinkney's trial, and she recalled having taken an oath with other jurors. (SH 47-48, 53). Finally, the trial judge's former courtroom deputy testified that he always administers such oaths and that his contemporaneous notes from the Pinkney trial recited that all jurors, including alternates, had been sworn. (SH 57-60, 62, 64-65, 77). Following the hearing the trial judge issued a decision in which he found -- based on the testimony of the alternate juror, the testimony of the deputy, the deputy's notes and the improbability that everyone in the court would have ignored such an oversight -- that the oath had been administered to all the jurors, including alternates, and that

the court reporter had erred in not noting it. (Israel Decl., Ex. B at 19-20).[3]

Petitioner filed an appeal to the Appellate Division, First Department in June 2002. He asserted the same two claims as he presses in this proceeding -- that is, the trial court's purported failure to administer an oath to the alternate jurors, two of whom ended up on the jury when it deliberated on a verdict, and the refusal of the trial judge to give an alibi instruction to the jury. The appellate court affirmed the conviction on December 10, 2002. People v. Pinkney, 300 A.D.2d 79, 750 N.Y.S.2d 749 (1st Dep't 2002). It concluded that the post-trial hearing record supported Justice Leibovitz's finding that the alternate jurors had been sworn and that the trial transcript was in error. The panel also held that the denial of an alibi instruction was proper since the testimony proffered by the defense had not established that petitioner had not been at the location of the robbery and had not even demonstrated that it would have been difficult for him to have been there. Alternatively, the panel opined that even if such a charge would have been justified, its omission did not require

---

[3] Respondent's counsel reports that she has been unable to locate a copy of the trial court's hearing decision. (Resp.'s Memo of Law at 9 n.9). In any event, a comparison of the state appellate briefs of the two sides shows that they do not disagree as to the substance of the court's decision. (See Israel Decl., Ex. A at 27-28 & Ex. B at 19-20).

6

reversal since the court's jury charge had fully explained that the State bore the burden of proving that Pinkney had committed the crime and that this burden never shifted to the defendant. <u>Id.</u> at 79, 750 N.Y.S.2d at 749.

Petitioner next sought leave to appeal to the New York Court of Appeals, pressing both claims that he had asserted before the Appellate Division. (Israel Decl., Ex. D). The Court of Appeals denied his application on March 3, 2003. <u>People v. Pinkney</u>, 99 N.Y.2d 631, 760 N.Y.S.2d 113 (2003).

Having been rebuffed by the state courts, petitioner turned to federal court, filing his habeas petition here.

<u>ANALYSIS</u>

Pinkney pursues challenges to the propriety of the jury-selection process insofar as the trial court may have omitted to administer an oath to two alternate jurors who ultimately deliberated and voted on the charge against him. He also complains about the refusal of the trial judge to give an alibi charge. We address these claims in the order in which petitioner presents them, but we first summarize certain principles that govern the scope of federal habeas review.

I. <u>Habeas Standard of Review</u>

The stringency of federal habeas review turns on whether the state courts have passed on the merits of the petitioner's claim, that is, whether the decision of the highest state court to consider the claim is "based on the substance of the claim advanced, rather than on a procedural, or other, ground." <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 311 (2d Cir. 2001)(discussing 28 U.S.C. § 2254(d)). In Pinkney's case, the Appellate Division addressed the substance of his current claims, holding that the lower court had properly found that all jurors had been administered a juror's oath and that the trial court had permissibly declined to provide an alibi instruction. <u>Pinkney</u>, 300 A.D.2d at 79, 750 N.Y.S.2d at 749. In short, the Appellate Division adjudicated Pinkney's claims "on the merits." <u>See</u>, <u>e.g.</u>, <u>Norde v. Keane</u>, 294 F.3d 401, 410 (2d Cir. 2002)(state court decides "claim on the merits when it (1) disposes of the claim on the merits and (2) reduces its disposition to judgment."); <u>Sellan</u>, 261 F.3d at 311. <u>See</u> <u>also</u> <u>Henry v. Poole</u>, 409 F.3d 48, 68 (2d Cir. 2005).

Once the state court has addressed the merits of the petitioner's habeas claims, he may obtain relief only if the state court's ruling

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). <u>See</u>, <u>e.g.</u>, <u>Bell v. Cone</u>, 535 U.S. 685, 693-94 (2002); <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000); <u>Howard v. Walker</u>, 406 F.3d 114, 121-22 (2d Cir. 2005); <u>Brown v. Artuz</u>, 283 F.3d 492, 497-98 (2d Cir. 2002).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." <u>Howard</u>, 406 F.3d at 122 (quoting <u>Kennaugh v. Miller</u>, 289 F.3d 36, 42 (2d Cir. 2002)). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 413). As for what constitutes an "unreasonable application" of settled law, "a federal court may not grant habeas simply because, in its independent judgment, the 'relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" <u>Howard</u>, 406 F.3d at 122 (quoting <u>Fuller v. Gorczyk</u>,

273 F.3d 212, 219 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411)). The Supreme Court observed in Williams that "unreasonable" did not mean "incorrect" or "erroneous," id. at 410-11, noting that a writ could issue under the "unreasonable application" provision only "if the state court identifies the correct governing legal principle from this Court's decision [and] unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. As implied by this language, "Some increment of incorrectness beyond error is required . . . [H]owever, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Monroe v. Kuhlman, 433 F.3d 236, 246 (2d Cir. 2006)(quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).

As for the state courts' factual findings, under the habeas statute "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003). See generally Rice v. Collins, 126 S.Ct. 969, 974 (2006).

II. <u>The Juror-Oath Claim</u>

Petitioner complains that the trial court did not administer a juror's oath to two jurors who ultimately deliberated in his case. The exact legal theory that Pinkney is espousing is quite unclear, but in any event the short answer to this claim is that the trial judge, affirmed by the Appellate Division, found that the jurors had been sworn. That finding of fact is binding on us unless disproved by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and petitioner offers no such evidence.

In any event, the only violation articulated by petitioner was one of state law,[4] and even if he demonstrated that such a violation occurred, he would be entitled to no relief here, since the writ may be granted only to remedy a violation of federal law. <u>See</u>, <u>e.g.</u>, <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Moreover, even if we ignore the way in which petitioner articulates his claim, we still discern no constitutional or other federal violation even if the oath was inadvertently omitted.

Petitioner was entitled to a fairly chosen and unbiased jury, <u>see</u>, <u>e.g.</u>, <u>Irvin v. Dowd</u>, 366 U.S. 717, 721-22 (1961), but he

---

[4] Notably, in Pinkney's appellate brief he cited only state-law cases on this specific point. (<u>See</u> Israel Decl., Ex. A at 30-37).

offers no evidence that the jurors who deliberated were improperly selected or biased. Indeed, during voir dire the trial judge repeatedly asked the various panels of potential jurors whether there was any reason why they could not serve as fair and impartial jurors, and none suggested that they could not do so. (Tr. 57, 122-23, 199, 249). The court also advised all potential jurors, including the alternate jurors, that they must apply the law as instructed by the court (Tr. 72-74, 199, 252, 275), and none suggested that they would not do so. In addition the alternates all specifically represented that they could be fair and would render a guilty verdict only if guilt were proven beyond a reasonable doubt. (Tr. 257, 260). The judge also repeated in his final charge the admonition that the jurors must apply the law as given to them and must deliberate without "fear or favor or passion or prejudice or sympathy" (Tr. 540-41), and that they must decide the case based solely on the evidence. (Tr. 562). Petitioner offers us (and offered the state courts) no reason to suspect that the jurors diverged from these instructions. See generally Penry v. Johnson, 532 U.S. 782, 799 (2001)(court must assume that jurors complied with instructions); Richardson v. Marsh, 481 U.S. 200, 211 (1987)(same).

In short, the first claim is plainly meritless.

III. <u>The Alibi-Charge Claim</u>

Petitioner's remaining ground for relief focuses on the refusal of the trial court to give an alibi charge. Pinkney claims that this ruling, which was affirmed by the Appellate Division, denied him a fundamentally fair trial, in violation of his due-process rights. This argument also is misconceived.

"In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." <u>Sams v. Walker</u>, 18 F.3d 167, 171 (2d Cir. 1994)(<u>citing</u> <u>Cupp v. Naughten</u>, 414 U.S. 141, 146-47 (1973)). An error in a jury instruction is cognizable on habeas review only if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." <u>Cupp</u>, 414 U.S. at 147; <u>see also</u> <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155 (1977); <u>United States ex rel. Smith v. Jochannananye</u>, 505 F.2d 1355, 1359 (2d Cir. 1974); <u>Fabelo v. Greiner</u>, 1999 WL 637233, at *7 (S.D.N.Y. Aug. 19, 1999)("The standard for reviewing a jury charge is extremely high: The erroneous instruction must have 'worked to [petitioner's] actual and substantial disadvantage.'")(<u>quoting</u> <u>Lopez v. Scully</u>, 614 F. Supp. 1135, 1140 (S.D.N.Y. 1985)).

Moreover, the omission of a requested instruction "is less likely to be prejudicial than a misstatement of the law", and thus a petitioner who seeks to demonstrate that denial of a charge request triggered a constitutional violation bears an "especially heavy" burden. Henderson, 431 U.S. at 155.

In this case, the trial court's refusal to give the requested alibi charge does not justify habeas relief. The ruling was consistent with state law, and it most assuredly did not deny petitioner his due-process right to a fundamentally fair trial.

The propriety under New York law of the trial judge's ruling on this issue was argued to the Appellate Division, which addressed the matter on the merits and held that the ruling was proper. That determination by a mid-level state appellate court is a presumptively correct interpretation of New York law, see, e.g., DiGuglielmo v. Smith, 366 F.3d 130, 137 (2d Cir. 2004)("federal courts must of course defer to state-court interpretations of the state's laws, so long as those interpretations are themselves constitutional . . .")(citing Davis v. Strack, 270 F.3d 111, 123 n.4 (2d Cir. 2001)); Ponnapula v. Spitzer, 297 F.3d 172, 183 (2d Cir. 2002)("we are left only with the state intermediate court's interpretation of the terms in the state statute and we are bound by that interpretation . . ."); cf. Bradshaw v. Richey, 126 S.Ct.

602, 604 (2005), and we are offered no basis for concluding that the First Department's interpretation is inconsistent with New York law.

Indeed, the appellate court's holding was plainly justifiable under state law. The standard alibi instruction simply tells the jury that the State has the burden of disproving the defendant's alibi. See Parreno v. Annetts, 2006 WL 689511, *11-12 (S.D.N.Y. March 20, 2006)(quoting H. Leventhal, 1 *Charges to Jury & Requests to Charge in Crim. Cases in N.Y.* § 5:7 (2005)). The charge is appropriate when the defendant offers "legally sufficient [evidence of] the defense of alibi," People v. Warren, 76 N.Y.2d 773, 775, 559 N.Y.S.2d 954, 955 (1990), that is, if "the alibi testimony, when viewed together with all the other evidence, could have created a reasonable doubt." People v. Jack, 74 N.Y.2d 708, 709, 543 N.Y.S.2d 381, 382 (1989). The evidence need not prove that commission of the crime by the defendant was impossible, id., but the instruction is not appropriate if the alibi evidence has "an insufficient nexus to defendant's whereabouts at the time and place of the crime." People v. Taylor, 222 A.D.2d 204, 204, 634 N.Y.S.2d 474, 475 (1ˢᵗ Dep't 1995). Most importantly, even if a defendant presents sufficient evidence to permit a jury to find that he was not present at the scene and time of the crime, the failure of the trial judge to give a specific alibi charge is not reversible error if "the charge as

a whole conveyed the necessary information regarding the People's burden of proof." Warren, 76 N.Y.2d at 775, 559 N.Y.S.2d at 955. Accord, e.g., People v. Edwards, 3 A.D.3d 504, 504-05, 771 N.Y.S.2d 145, 146-47 (2d Dep't 2004); People v. Jones, 216 A.D.2d 23, 24, 628 N.Y.S.2d 62, 63 (1st Dep't 1995).

In this case it was entirely reasonable for the state courts to determine that an alibi charge was not warranted. The robbery of Ms. Armand occurred between 8:10 and 8:20 a.m. on December 31 at 55 East 102nd Street. (Tr. 292, 362). Pinkney's friend, Mr. Ben-Jochannan, testified that petitioner was with him between 143rd and 144th Streets until at least 6:00 a.m., and remained with him, "at the latest", until 7:30 a.m., and Quincy King reported seeing petitioner at 143rd Street at some undetermined time which he estimated was between 7:30 and 7:45 a.m. At best, this testimony -- if credited -- would establish that Pinkney was approximately 40 blocks from the crime scene at least twenty-five minutes before the robbery. Obviously petitioner could have traversed that distance in the requisite time by any number of conveyances, including public transportation. Under these circumstances it is not surprising or inappropriate that the trial court declined to give the requested charge or that the Appellate Division affirmed that ruling.

In addition, as noted by the appellate panel, the trial court

fully explained the State's burden of proof and the presumption of
innocence and advised the jurors that the burden on the State never
shifted. (Tr. 272-73, 549-50, 552-53). Moreover, the court
specifically noted, in its identification instruction, that the
State must prove beyond a reasonable doubt that it was the defendant
who committed the robbery. (Tr. 549-50, 551-52, 554). It thus made
clear that if the alibi testimony -- or any other evidence in the
case -- created a reasonable doubt as to petitioner's responsibility
for the crime, the jury must return a verdict of acquittal. Given
that set of instructions, the failure to provide an alibi charge was
permissible under New York law.

It equally follows that petitioner cannot show that the
challenged ruling infringed his constitutional rights by denying him
a fundamentally fair trial. An alibi charge is designed merely to
reinforce the basic notion that the prosecutor must prove the
defendant's involvement in the charge crime and must do so beyond
a reasonable doubt. See, e.g., United States ex rel. Waters v.
Bensinger, 507 F.2d 103, 104-05 (7th Cir. 1974); Parreno, 2006 WL
689511, *11-12. The only occasion when the court's handling of this
issue may trigger a serious constitutional problem is if the court
conveys the notion to the jury that the defendant who asserts an
alibi defense bears some measure of the burden of proof or that his
invocation of the defense in some way dilutes the prosecutor's

burden to prove guilt beyond a reasonable doubt. <u>See</u>, <u>e.g.</u>, <u>Johnson v. Bennett</u>, 393 U.S. 253, 254-55 (1968); <u>United States v. Fortes</u>, 619 F.2d 108, 123 (1st Cir. 1980). <u>See</u> <u>also</u> <u>Hodge v. Henderson</u>, 761 F. Supp. 993, 1004-05 (S.D.N.Y. 1990), <u>aff'd</u>, 929 F.2d 61 (2d Cir. 1991).

In Pinkney's case there was no hint of such an implication in the trial court's instructions to the jury. Indeed, as the Appellate Division noted, Justice Leibovitz clearly explained to the jurors that the State at all times bore the burden of proving guilt beyond a reasonable doubt. Necessarily, then, the trial court's refusal to provide an alibi charge, even if the instruction was arguably justifiable, did not infringe petitioner's due-process right to a fundamentally fair trial. <u>See</u>, <u>e.g.</u>, <u>Fox v. Mann</u>, 71 F.3d 66, 71-72 (2d Cir. 1995)(trial court's possibly erroneous instruction that alibi defense required jury to decide whether defense alibi witnesses were truthful did not deny due process because of additional instructions emphasizing that State bore burden of proof and that defendant did not); <u>Duckett v. Godinez</u>, 67 F.3d 734, 743-46 (9th Cir. 1995)(refusal to give alibi defense did not violate due process since trial court emphasized State's burden of proof and presumption of innocence)[5]; <u>Alicea v. Gagnon</u>, 675 F.2d

_____

[5] The Court in <u>Duckett</u> also noted that defense counsel had emphasized the alibi defense in his summation, <u>id.</u> at 745-46, an approach also followed, at least to a degree, in Pinkney's case.

913, 926 (7th Cir. 1982). <u>Accord</u> <u>Wright v. Smith</u>, 569 F.2d 1188, 1192-93 (2d Cir. 1978); <u>Waters</u>, 507 F.2d at 104-05. <u>See also</u> <u>Wyniemko v. Smith</u>, 2000 WL 760704, *8 (E.D. Mich. May 10, 2000); <u>Parreno</u>, 2006 WL 689511, at *13-14; <u>Cruz v. Greiner</u>, 1999 WL 1043961, *17 (S.D.N.Y. Nov. 17, 1999).[6]

Finally, petitioner's claim must fail as well since the Appellate Division addressed the merits of the claim, and its decision manifestly did not contradict or unreasonably apply any Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

CONCLUSION

For the reasons noted, we recommend that the writ be denied and the petition dismissed with prejudice

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written

---

(Tr. 511-12). The Ninth Circuit also cited the relative weakness of Duckett's alibi evidence, <u>id.</u> at 746, which is equally true of Pinkney's alibi case.

[6] It bears mention that a number of federal courts have held that in federal criminal trials the court must give an alibi instruction if requested by the defendant and justified by the evidence, but those decisions all involved the supervisory authority of the circuit courts and not a due-process assessment, as required in a habeas proceeding. <u>See</u> <u>Duckett</u>, 67 F.3d at 745 (surveying case law and emphasizing this distinction).

objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Laura T. Swain, Room 1205, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: New York, New York**
      **August 3, 2006**

                                            **RESPECTFULLY SUBMITTED,**

                                            **MICHAEL H. DOLINGER**
                                            **UNITED STATES MAGISTRATE JUDGE**

20

Copies of the foregoing Report and Recommendation have been mailed
this date to:

Mr. Daryl Pinkney
# 01-A-0126
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

Laurie M. Israel, Esq.
Assistant Attorney General
  for the State of New York
120 Broadway
New York, New York 10271